## CONTINENTAL BANK & TRUST CO. OF NEW YORK v. FIRST NAT. PETROLEUM TRUST.

### Civil Action No. 359.

District Court, D. Rhode Island.
March 2, 1946.

860

Daniel H. Morrissey, Robert J. Conley, and James H. Hagan, all of Providence, R. I., for plaintiff.

Edwin J. Tetlow, of Providence, R. I., for defendant.

Ira Lloyd Letts, Andrew P. Quinn, and Frank Licht, all of Providence, R. I., for interveners.

Roger S. Foster, Sol., Robert S. Rubin, Asst. Sol., and Alexander Cohen, all of Philadelphia, Pa., for Securities and Exchange Commission, amicus curiae.

HARTIGAN, District Judge.

This is a civil action brought by The Continental Bank & Trust Company of New York, a corporation organized and existing under the laws of the State of New York (hereinafter called the Institutional Trustee) against The First National Petroleum Trust, a business trust organized and existing under the laws of the State of Rhode Island (hereinafter called the Trust) to recover certain items of alleged overdue interest and certain charges and expenses incident to this action alleged to be owed by the Trust.

The action is based on a written Indenture, dated as of October 1, 1941, between the parties.

The complaint alleges the sufficiency of the "net income" of the defendant Trust, during the period involved, to meet its interest obligations payable therefrom; the obligation of the defendant under the Indenture to pay interest overdue for more than sixty days directly to the Institutional Trustee for the benefit of all debenture holders upon demand by the Trustee; and the failure of the defendant after such demand to pay the agreed interest on the debentures which had been overdue since January 28, 1944.

The defendant's answer sets up affirmative defenses to the effect that the holders of a majority in principal amount of the debentures have directed the plaintiff to bring suit for the items of interest, and the charges and expenses on July 1, 1947, and not before, and have requested the plaintiff to waive the default of the defendant in its failure to perform the covenant and agreement in regard to the interest payments. The defendant further states that the said debentures make no provision for the payment of principal on account of outstanding mortgages and that said net income of the Trust and other funds of the Trust were used to make principal payments on outstanding mortgages as set forth in Exhibit "A." The defendant states that the plaintiff is without authority to bring this action for the payment of items of interest.

The interveners representing a majority in the principal amount of the debenture holders have filed an answer and "Counterclaim in the Nature of a Petition for Declaratory Judgment" raising similar defens-

es and affirmatively seeking a judgment declaring plaintiff to lack authority to declare any default of interest or to maintain any action for the recovery of past due interest except as directed by the majority debenture holders.

A motion of the Securities and Exchange Commission for leave to appear, file a brief and present oral arguments, as amicus curiae, was granted.

The reasons stated in said motion are:

"1. Under the Trust Indenture Act of 1939, 15 U.S.C.A. §§ 77aaa et seq., the Securities and Exchange Commission is charged with administrative responsibilities in securing compliance, inter alia, with the requirements of that statute as to permissible and mandatory provisions of trust indentures of the type here involved prior to any issuance of securities thereunder. In this connection, the Commission must examine each indenture with the view to determining its adherence to the statutory standards for the protection of public investors and permit or refuse the qualification of an indenture accordingly.

"2. The present indenture has been qualified under this Act.

"3. The instant controversy between the institutional trustee, on the one hand, and the trust management and majority debenture holders on the other hand, involves, inter alia, a construction of Section 316 of the Act from which certain provisions of the trust indenture were taken, as permitted by that statute.

"4. In view of its administrative responsibilities under this Act for the protection of the investing public, the Securities and Exchange Commission desires to submit its views on the construction of the statutory and related indenture provisions here involved."

The parties have signed the following Agreed Statement of Facts:

"It is hereby stipulated and agreed by and between the parties hereto, by their respective attorneys, that the following facts if material shall be taken as true; provided, however, that this stipulation shall be without prejudice to the right of any party hereto to introduce other and further evidence not inconsistent with the facts herein stipulated to be taken as true.

"1. The plaintiff, The Continental Bank & Trust Company of New York, as it is Trustee under the Indenture hereinafter mentioned, is a corporation organized and existing under the laws of the State of New York, with its principal place of business in the city, county and State of New York, and the defendant, The First National Petroleum Trust, is a business trust organized and existing under the laws of the State of Rhode Island, the office of which business trust is maintained at 1417 Turks Head Building, Providence, Rhode Island. The Trustee of such business trust at the time of the commencement of this action was Ralph J. Pryor of Wichita, Kansas, and the Trustee of such business trust at the time of the filing of this agreed statement of facts is Ralph M. Greenlaw of Providence, Rhode Island.

"2. The matter in controversy—exclusive of interest and costs—is in excess of the sum of $3,000.

"3. On October 1, 1941, the plaintiff and the defendant entered into an 'Indenture'—a true and complete copy of which is attached to the Complaint filed in this action, made a part of such Complaint and marked 'Exhibit A.' On August 26, 1943 the plaintiff and the defendant entered into a 'First Supplemental Indenture'—a true and complete copy of which is attached to the said Indenture of October 1, 1941, made a part of such Indenture and such Complaint and marked with such Indenture of October 1, 1941 as 'Exhibit A.' Such original Indenture of October 1, 1941 and such Supplemental Indenture of August 26, 1942 contain a statement of all of the agreements and understandings, and a statement of all of the rights, duties and obligations, of the parties who have signed this Agreed Statement of Facts; and it is the intention of the parties hereto in joining in this Agreed Statement of Facts that the provisions of such original and supplemental Indentures shall be considered and treated by this Court as the determinative evidence of any fact or statement concerning such Indentures, and if there should be any conflict or variance between this

Agreed Statement of Facts and such Indentures, or if in this Agreed Statement of Facts there should be any misstatement of the provisions or the purport of such Indentures, the provisions of such Indentures shall be considered as final and conclusive and controlling. The provisions of the First Supplemental Indenture dated August 26, 1942 have no bearing on any issue involved in this cause and such First Supplemental Indenture may be disregarded by this Court in the consideration of this cause, and any reference to the 'Indenture' or 'the original Indenture' or 'such Indenture' in this Agreed Statement of Facts shall mean the Indenture dated October 1, 1941.

"4. In said original Indenture of October 1, 1941 it was stated and agreed in part as follows:

"That the First National Petroleum Trust (the defendant in this cause) hereinafter called the 'Trust,' had authorized an issue of 8% Cumulative 20-year Subordinated Income Debentures for the aggregate principal amount of $2,150,000; that the Continental Bank & Trust Company of New York (the plaintiff in this cause), hereinafter called the 'Institutional Trustee,' was designated as the Institutional Trustee, for the benefit of all the present and future holders of the debentures without preference, priority or distinction of any of the debentures over any of the others.

"That said debentures were to bear interest at the rate of 8% per annum from November 1, 1941 payable monthly on the twenty-eighth day of every succeeding month until maturity, such interest to be payable out of 'net income' as defined in the Indenture; that if the trust should fail for a period of sixty days to pay any instalment of interest on the said debentures, upon demand of the Institutional Trustee the Trust would pay to the Institutional Trustee for the benefit of the holders of the debentures then outstanding the whole amount of interest which then shall have become due and payable on such debentures with interest on the overdue instalment of interest and reasonable compensation to the Institutional Trustee, its agents and attorneys, and any other reasonable expenses and liabilities incurred by the Institutional Trustee under the Indenture; that in case the Trust should fail forthwith to pay such amount, the Institutional Trustee in its own name as trustee of an express trust would be entitled and empowered to institute any action or proceeding at law or in equity for the collection of the sums so due and unpaid and could prosecute any such action or proceeding to the judgment or final decree, and could enforce any such judgment or final decree against the Trust, and collect the monies adjudged or decreed to be payable out of the property of the Trust, wherever situated, in the manner prescribed by law; that every recovery of judgment in any such action or other proceeding, subject to the payment of the expenses, disbursements and compensation of the Institutional Trustee, its agents and attorneys, should be for the ratable benefit of the holders of the debentures which shall be the subject of such action or proceedings.

"5. The beforementioned 8% Cumulative 20-year Subordinated Income Debentures were issued by the Trust in manner as provided in such Indenture and the form of such debentures was similar in all particulars to the form of debenture set forth in full on pages 2, 3 and 4 of the original Indenture dated October 1, 1941, and this form of debenture set forth on such pages may be considered as having the same purport and effect in evidence as if one of the debentures issued by such Trust had been introduced in evidence in this cause.

"6. Interest on such debentures at the rate of 8% was paid on such debentures by said Trust to said Institutional Trustee for the benefit of the holders of the beforementioned debentures from November 1, 1941 to December 1, 1943. No interest has been paid on such debentures for the period from December 1, 1943 to July 31, 1944, and during such period the interest which would have been due and payable on such debentures out of 'net income' as defined in the original Indenture of October 1, 1941, if there had been sufficient 'net income' as so defined, is in the amounts set forth in Exhibit 1 attached hereto and made a part hereof. The Trust was obligated to pay

interest on such debentures issued in the aggregate principal sum of $2,146,645 at the rate of 8% per annum, and the debentures issued by the Trust to the debenture holders provided that such interest should be payable monthly out of 'net income,' as defined in the Indenture, on the twenty-eighth day of each succeeding month. The term 'net income' is defined in the original Indenture of October 1, 1941 in manner following:

" 'The term "Net Income" as used in this Indenture shall mean the Gross Income of the Trust from all sources, received or accrued during each calendar month plus any "excess net income" (hereinafter defined) after deducting therefrom all operating, general and administrative expenses, interest (except interest on debentures) and taxes (except Federal and State income and excess profit taxes) and before providing for depletion and depreciation in accordance with generally accepted standards of good accounting practice for similar business.'

"7. It was the obligation of the Trust under the provisions of the original Indenture of October 1, 1941 to file in each month with the Institutional Trustee certain certificates setting forth the 'net income' of the Trust as that term was defined in the original Indenture and the provisions of the Indenture wherein such obligation is set forth are contained in Section 4 on page 15 of such Indenture and read as follows:

" 'The Trust shall file with the Institutional Trustee, at least 5 days before each interest paying date, a certificate setting forth the net income of the Trust as that term is defined in Section 2 of Article One. Said certificate shall contain a summary of the gross revenues from all sources and excess net income (as defined in Article One) and the deductions made therefrom to arrive at the net income.'

"8. Under the terms and provisions of said original Indenture of October 1, 1941 it was the obligation of the Trust to render annually to the Institutional Trustee certain certified audits of the Trust and such obligation on the part of the Trust is set forth in Section 5 on page 15 of such original Indenture in the following manner:

" 'The Trust will render to the Institutional Trustee at least annually within two months after the end of the fiscal year, an audit of the Trust certified to and prepared by certified public accountants accompanied by a certificate meeting the requirements of the last paragraph of Section 3 of Article Fifteen.'

"9. The Trust did file—although not always at the time required in such Indenture—the certificates required to be filed by the Trust with the Institutional Trustee under the provisions of Section 4 of Article Six of such original Indenture of October 1, 1941, which certificates set forth the 'net income' of the Trust, as that term was defined in Section 2 of Article one of such Indenture, and in such certificates it appeared that the 'net income' of the Trust for the following periods was in the following sums:

| | | |
|---|---|---|
| 1943—December | | $40,114.61 |
| 1944—January | | 45,210.41 |
| February | | 45,236.10 |
| March | | 35,270.48 |
| April | | 37,662.63 |
| May | | 35,450.45 |
| June | | 13,662.70 |
| July | (Loss) | 30,491.74 |

"There was sufficient 'net income' earned by the said Trust in the month of December, 1943 and the months of January, February, March, April, May, and June, 1944, to have paid interest at the rate of 8% per annum on the aggregate principal amount of $2,146,645 of such debentures on the twenty-eighth day of January, February, March, April, May, June and July, 1944; and there was sufficient 'excess net income,' as that term is defined in the Indenture, from prior periods to have paid the interest due on the twenty-eighth day of August, 1944 for said month of July, 1944. Interest was due and payable—and is now due and payable—by the said Trust to the said Institutional Trustee, for the benefit of the holders of debentures then outstanding, for such months of December, 1943 and January, February, March, April, May and June, 1944, in the aggregate sum of $93,-

826.00, and if interest is due and payable out of 'excess net income' there is due and payable the additional sum of $13,609.50 for interest for the month of July, 1944. There is also due and payable by the said Trust to the said Institutional Trustee interest on all overdue instalments of interest. Such interest may be computed by this Court at the rate of 6% per annum from the date when such instalments of interest became due to the date of the determination of this cause by this Court.

"10. There is attached hereto and marked 'Exhibit 2' a statement showing the consolidated 'net income' of the Trust for the period December 1, 1943 to and including July, 1944, and a statement taken from the records of the Trust showing that all the Net Income and other monies were used to make payments on mortgages during the months of December, 1943 through July, 1944.

"11. The Institutional Trustee has made proper demand upon the Trust for the payment of such overdue instalments of interest on such debentures, has made proper demand for interest on such overdue instalments of interest, and has made proper demand for all the charges, expenses, disbursements and compensation claimed to be due in this action to the Institutional Trustee in accordance with the obligations of the defendant under the Indenture.

"12. It is provided in section 3 of Article Seven on page 18 of the original Indenture of October 1, 1941, that if the Trust shall fail for a period of sixty days to pay any instalment of interest on the debentures, then upon demand of the Institutional Trustee the Trust will pay to the Institutional Trustee for the benefit of the holders of debentures then outstanding the whole amount which then shall have become due and payable on all such debentures, with interest on the overdue principal and instalments of interest and reasonable compensation to the Institutional Trustee, its agents and attorneys, and any other reasonable expenses and liabilities incurred by the Institutional Trustee under said Indenture. It is further provided in such Section 3 that in case the Trust shall fail forthwith to pay such amounts, the Institutional Trustee, in its own name, shall be entitled and empowered to institute any action or proceeding at law or in equity for the collection of sums so due and unpaid and that every recovery of judgment in any such action or proceedings, subject to the payment of expenses, disbursements and compensation of the Institutional Trustee, its agents and attorneys, shall be for the ratable benefit of the holders of debentures which shall be the subject of such action or proceeding

"13. Thirty-two different holders of debentures of the Trust signed a letter dated September 12, 1944 addressed to the Institutional Trustee and delivered the same to said Institutional Trustee at various times within ten days thereafter. The names of the aforesaid debenture holders and the principal amount of debentures which they held are set forth in Exhibit 3 hereto attached, and a copy of said letter dated September 12, 1944 is hereto attached and marked Exhibit 4, and said list, marked Exhibit 3, of said holders of debentures of the Trust constituted a majority in principal amount of the debentures outstanding on September 12, 1944 and at all times thereafter. On September 12, 1944 the total amount of the debentures then outstanding was $2,146,645, and debentures aggregating $1,073,323 constituted a majority of the outstanding debentures. On September 12, 1944, the 'Trust Committee' of the defendant consisted of the following named members who held on said date the amount of debentures set opposite their respective names, which debentures total $105,000:

| | |
|---|---|
| Ralph M. Greenlaw | $ 64,000. |
| Joseph C. Hartwell | 32,500. |
| George Kelly | 8,500. |
| | $105,000. |

The Institutional Trustee replied to said letter of September 12, 1944 by letter dated September 22, 1944, a copy of which is attached hereto and marked Exhibit 5. The original of Exhibit 4 was signed by Ralph M. Greenlaw, Joseph C. Hartwell and Ira Lloyd Letts. Said Ralph M. Greenlaw, at the time he signed the original of Exhibit 4, and at all times thereafter,

in addition to the amount of debentures held by him individually, also held debentures in the amount of Thirty-five Hundred Dollars ($3500), as Trustee under the will of Clara H. Jerauld, deceased, debentures in the amount of Thirty-nine Hundred Dollars ($3900) as Executor under the will of Sallie L. Himes, and debentures in the amount of Twenty-two Thousand Seven Hundred Twenty-five Dollars ($22,725) as Co-Trustee under the will of Anna R. Downey. Said Joseph C. Hartwell, at the time he signed the original of Exhibit 4, and at all times thereafter, in addition to the amount of debentures held by him individually, held debentures in the amount of One Thousand Dollars ($1,000) as Trustee under Indenture dated February 25, 1931, and debentures in the amount of One Thousand Dollars ($1,000) as Trustee under Indenture dated March 31, 1937. Said Ira Lloyd Letts, at the time he signed the original of Exhibit 4, and at all times thereafter, in addition to the amount of debentures held by him individually, held debentures in the amount of Nineteen Hundred Dollars ($1900) as Trustee for First National Petroleum Trust under agreement dated February 14, 1941.

"14. The Complaint in this cause was filed on October 18, 1944, and four additional different holders of debentures of the Trust signed a letter dated October 24, 1944, addressed to the Institutional Trustee and delivered the same to said Institutional Trustee at various times within ten days thereafter. The names of said debenture holders and the principal amount of debentures which they held are set forth in Exhibit 6 attached hereto, and a copy of said letter dated October 24, 1944 is hereto attached and marked Exhibit 7.

"15. Thirty-five different holders of debentures of the Trust signed a letter dated as of November 1, 1944, addressed to the Institutional Trustee, and delivered the same to said Institutional Trustee at various times within ten days thereafter. The names of said debenture holders and the principal amount of debentures which they held are set forth in Exhibit 8 hereto attached, and a copy of said letter dated as of November 1, 1944 is hereto attached and marked Exhibit 9, and said list, marked Exhibit 8, of said holders of debentures of the Trust constituted a majority in principal amount of the debentures outstanding on November 1, 1944 and at all times thereafter. On November 1, 1944, the members of the 'Trust Committee' of the defendant consisted of the following named members who held debentures in the amount set opposite their respective names, a total of $41,000:

| | |
|---|---|
| John P. Chalmers | |
| Joseph C. Hartwell | $32,500. |
| George Kelly | 8,500. |
| | $41,000. |

The original of Exhibit 9 was signed by Ralph M. Greenlaw, Joseph C. Hartwell and Ira Lloyd Letts. Said Ralph M. Greenlaw, at the time he signed the original of Exhibit 9, and at all times thereafter, in addition to the amount of debentures held by him individually, also held debentures in the amount of Thirty-five Hundred Dollars ($3500) as Trustee under the will of Clara H. Jerauld, deceased, debentures in the amount of Thirty-nine Hundred Dollars ($3900) as Executor under the will of Sallie L. Himes, and also debentures in the amount of Twenty-two Thousand Seven Hundred Twenty-five Dollars ($22,725) as Co-Trustee under the will of Anna R. Downey. Said Joseph C. Hartwell, at the time he signed the original of Exhibit 9, and at all times thereafter, in addition to the amount of debentures held by him individually, also held debentures in the amount of One Thousand Dollars ($1,000) as Trustee under Indenture dated February 25, 1931, and debentures in the amount of One Thousand Dollars ($1,000) as Trustee under Indenture dated March 31, 1937. Said Ira Lloyd Letts, at the time he signed the original of Exhibit 9, and at all times thereafter, in addition to the amount of debentures held by him individually, also held debentures in the amount of Nineteen Hundred Dollars ($1900) as Trustee for the First National Petroleum under agreement dated February 14, 1941.

"16. Ten different holders of debentures of the Trust signed a letter dated December

8, 1944, addressed to the Institutional Trustee, and delivered the same to said Institutional Trustee at various times within ten days thereafter. The names of said debenture holders and the principal amount of debentures which they held are set forth in Exhibit 10 hereto attached, and a copy of said letter dated December 8, 1944 is hereto attached and marked Exhibit 11. The original of Exhibit 11 was signed by Joseph C. Hartwell, who at the time he signed the same and at all times thereafter, in addition to the amount of debentures held by him individually, also held debentures in the amount of One Thousand Dollars ($1,000) as Trustee under Indenture dated February 25, 1931, and debentures in the amount of One Thousand Dollars ($1,000) as Trustee under Indenture dated March 31, 1937.

"17. The principal amount of the debentures issued and outstanding are Two Million One Hundred Forty-six Thousand Six Hundred Forty-five Dollars ($2,146,-645.) The intervening petitioners were the owners and holders on September 12, 1944 of more than One Million Three Hundred Thousand Dollars ($1,300,000) total aggregate principal amount of 8% Subordinated 20-Year Income Debentures referred to in paragraph 3 of the Complaint, and have been at all times since. Debentures in the amount of Five Dollars ($5) were issued to the shareholders for each share of The First National Petroleum Trust of said shareholders.

"18. A list of the interveners and the amount of debentures owned and held by them at the time of intervention in this cause on December 11, 1944, and for several months prior thereto, and at all times thereafter, is set forth in Exhibit 12 attached hereto.

"19. The interveners at the time of intervention in this cause on December 11, 1944, and for several months prior thereto and at all times thereafter, constituted the holders of a majority in principal amount of the debentures outstanding.

"20. The interveners by their several letters in the forms attached hereto and marked Exhibits 4, 7 and 9, have directed the time, method and place of conducting the proceedings for the collection of over-due interest instalments for which the Complaint has been brought, have directed the Institutional Trustee not to bring any proceedings prior to July 1, 1947, and have in their letters, in the forms attached hereto and marked Exhibits 9 and 11, in writing requested that the plaintiff waive the default of the defendant Trust referred to in paragraph 4 of the Complaint with respect to the payment of overdue instalments of interest and with respect to performing the covenant contained in paragraph 3 of said Indenture. There was no default in the payment of interest prior to January 28, 1944 and there was no default in the payment of charges, fees and expenses to the Institutional Trustee prior to August 26, 1942.

"21. The Complaint in this case was filed on October 18, 1944 and the summons and a copy of the Complaint were served on the defendant, The First National Petroleum Trust, on October 19, 1944.

"22. It is agreed between the parties hereto that the plaintiff, in Exhibit B attached to its Complaint, has made claim to certain items for legal services and expenses of attorneys and for charges, fees and expenses of the Institutional Trustee, and it is agreed that if the Court shall enter decision for the plaintiff in this cause the Court shall enter decision for the following items set forth in said Exhibit B:

| | | |
|---|---|---|
| Item 9 | For legal services of Carl O. Hoffman as stated in bill dated August 26, 1942 | $1500.00 |
| Item 10 | For legal services of Carl O. Hoffman as stated in bill dated September 1, 1943 | 400.00 |
| Item 11 | For charges, fees and expenses of The Continental Bank & Trust Company of New York as set forth in the following bills, namely: | |
| | (a) Bill rendered December 16, 1943 | 1550.00 |
| | (b) Bill rendered September 16, 1943 | 15.70 |
| | (c) Bill rendered June 21, 1944 | 143.83 |

"23. It is agreed that the parties—with the consent of the Court—shall by stipulation provide for a hearing and determination at a later date of the matters involved in Items numbered 12, 13 and 14 of Exhibit B attached to the Complaint.

"Daniel H. Morrissey
"J. Henry Hagan
"Attorneys for the Plaintiff
"Edwin J. Tetlow
"Attorney for the Defendant
"Ira Lloyd Letts
"Andrew P. Quinn
"Attorneys for the Interveners"

The Indenture provides:
"Article Seven
"Remedies of Institutional Trustee and Debenture Holders

"Section 1. Except where otherwise indicated by the context or where the term is otherwise defined for a specific purpose, the term 'default' wherever used in this Indenture shall mean:

"a. The failure of the Trust to pay the principal of any of the Debentures when and as the same shall become payable, whether at maturity as therein expressed, or by call for redemption as authorized by this Indenture or otherwise.

"b. the failure of the Trust to pay the interest on the Debentures within three years after the same shall become due and payable as herein and in the Debentures expressed;

"c. the failure of the Trust to observe and perform any other of the covenants or agreements on the part of the Trust contained in this Indenture or in any Indenture supplemental hereto for a period of sixty days after written notice from the Institutional Trustee specifying such failure and requiring the Trust to remedy the same, shall have been given to the Trust;
* * * * * * *

"Section 2. If any one or more of the above described defaults shall happen, then, and in each and every such case, during the continuance of any such default either the Institutional Trustee, by notice in writing to the Trust, or the holders of at least twenty-five percentum (25%) in principal amount of the Debentures then outstanding by notice in writing to the Trust and to the Institutional Trustee, may declare the principal of all the Debentures then outstanding (if not then due and payable) to be due and payable, and upon any such declaration the same shall become and be immediately due and payable, anything in this Indenture or in the Debentures contained to the contrary notwithstanding. This provision, however, is subject to the condition that, if, at any time, after the principal of the Debentures shall have been so declared to be due and payable, and before any judgment or decree for the payment of the moneys shall have been obtained or entered as hereinafter provided, the principal of all the Debentures which shall have matured in accordance with their terms and not by declaration and all arrears of interest, if any, upon all the Debentures and the reasonable charges and expenses of the Institutional Trustee, its agents and attorneys, shall be paid by the Trust or deposited with the Institutional Trustee, and every other default under this Indenture shall have been made good to the reasonable satisfaction of the Institutional Trustee or provision deemed by the Institutional Trustee to be adequate therefor shall have been made, then and in every such case the holders of a majority in principal amount of the Debentures then outstanding, by written notice to the Trust and the Institutional Trustee, may consent to the waiver of default by reason of which the principal of the Debentures shall have been so declared to be due and payable and may rescind and annul such declaration and its consequences; but no such waiver, rescission or annulment shall extend to or affect any subsequent default or impair any right consequent thereon.

"Section 3. If the Trust shall fail for a period of sixty (60) days to pay any installment of interest on the Debentures as herein provided for or shall fail to pay the principal of any of the Debentures when and as the same shall become due and payable, whether at maturity as defined in Article One, Section 2, or otherwise, then, upon demand of the Institutional Trustee, the Trust will pay to the Institutional Trustee for the benefit of the holders of the Debentures then outstanding the whole

amount which then shall have become due and payable on all such Debentures, as the case may be, with interest on the overdue principal and installments of interest and reasonable compensation to the Institutional Trustee, its agents and attorneys, and any other reasonable expenses and liabilities incurred by the Institutional Trustee under this indenture.

"In case the Trust shall fail forthwith to pay such amounts, the Institutional Trustee, in its own name as trustee of an express trust, shall be entitled and empowered to institute any action or proceedings at law or in equity for the collection of the sums so due and unpaid, and may prosecute any such action or proceedings to judgment or final decree, and may enforce any such judgment or final decree against the trust, and collect the moneys adjudged or decreed to be payable out of the property of the trust, wherever situated in the manner provided by law. Every recovery of judgment in any such action or other proceeding, subject to the payment of the expenses, disbursements and compensation of the Institutional Trustee, its agents and attorneys, shall be for the ratable benefit of the holders of the Debentures which shall be the subject of such action or proceedings. All rights of action upon or under any of the Debentures or this Indenture may be enforced by the Institutional Trustee without the possession of any of the Debentures and without the production of any thereof at any trial or any proceeding relative thereto.

"The Institutional Trustee is hereby appointed, and each and every holder of the Debentures, by receiving and holding the same, shall be conclusively deemed to have appointed the Institutional Trustee, the true and lawful attorney-in-fact of such holder, with authority to make or file (whether or not the Trust shall be in default in respect of the payment of the principal of, or interest on, any of the Debentures, and whether or not the Institutional Trustee shall have made any demand for payment pursuant to the provisions of this Section 3), in its own name as Institutional Trustee of an express trust or otherwise as it shall deem advisable, in any receivership, insolvency, liquidation, bankruptcy, re-organization or other judicial proceedings relative to the Trust, its creditors or its property, any and all claims, proofs of debt, petitions, consents, other documents and amendments of any thereof, and to receive payment of any sums that shall be distributable in any such proceedings on account of any of the Debentures and to execute and deliver any and all other papers and documents and to do and perform any and all other acts and things, as it may deem necessary or advisable in order to enforce in any such proceedings any of the claims of any of such holders in respect of any of the Debentures; and any receiver, assignee, trustee or debtor in any such proceedings is hereby authorized, and each and every holder of the Debentures, by receiving and holding the same, shall be deemed to have authorized any such receiver, assignee, trustee or debtor, to make payment of any and all such sums to or on order of the Institutional Trustee, and to pay to the Institutional Trustee any amount due it for compensation and expenses, including counsel fees incurred by it down to the date of such payment; provided, however, that nothing herein contained shall be deemed to authorize or empower the Institutional Trustee to consent to or accept or adopt on behalf of any holder of Debentures, any plan of reorganization or readjustment of the Trust affecting the Debentures or the rights of any holder thereto or to authorize or empower the Institutional Trustee to vote in respect of the claim of any holder of any Debentures in any such proceedings.

\* \* \* \* \* \* \*

"Section 7. The holders of a majority in principal amount of the Debentures at the time outstanding may direct the time, method and place of conducting any proceeding for any remedy available to the Institutional Trustee hereunder, or of exercising any trust or power hereby conferred upon the Institutional Trustee.

"The Institutional Trustee shall, upon the written request of the holders of a majority in principal amount of the Debentures at any time outstanding, waive any past default hereunder and its consequences, except a default in the payment of the principal of the Debentures at the date of ma-

turity stated therein, provided, however, that the Institutional Trustee shall not (1) waive a default in the payment of interest on the Debentures, unless all arrears of interest, with interest on overdue installments at the rate of 8% per annum, shall have been paid by the Trust or shall have been provided for by the deposit with the Institutional Trustee in trust of a sum sufficient to pay the same, or (2) waive a default in the payment of the redemption price of any of the Debentures that shall theretofore have been called for redemption, unless such redemption price, with interest thereon at the highest rate borne by any of the Debentures then outstanding, shall have been paid by the Trust or shall have been provided for by the deposit with the Institutional Trustee in trust of a sum sufficient to pay the same. In case of any such waiver, the Trust, the Institutional Trustee and the holders of the Debentures shall be restored to their former positions and rights hereunder, respectively; but no such waiver shall extend to any subsequent or other default or impair any right consequent thereon."

Section 8 deals with representative actions by debenture holders under stated conditions and states:

" * * * provided, however, that nothing in this Indenture or in the Debentures contained shall affect or impair the obligation of the Trust, which is absolute and unconditional, to pay the principal of, and the interest on, the Debentures to the respective holders of the Debentures at the due date in such Debentures, or affect or impair the right of action, which is also absolute and unconditional, of such holders to enforce the payment thereof."

"Section 9. No remedy herein conferred upon or reserved to the Institutional Trustee or to the holders of Debentures is intended to be exclusive of any other remedy or remedies, and each and every remedy shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. No delay or omission of the Institutional Trustee or of any holder of the Debentures to exercise any right or power accruing upon any de-

fault shall impair any such right or power or shall be construed to be a waiver of any such default or an acquiescence therein; and every power and remedy given by this Article Seven to the Institutional Trustee and to the holders of Debentures, respectively, may be exercised from time to time and as often as may be deemed expedient by the Institutional Trustee or by the holders of Debentures, as the case may be. In case the Institutional Trustee or any holder of Debentures shall have proceeded to enforce any right under this Indenture and the proceedings for the enforcement thereof shall have been discontinued or abandoned because of waiver or for any other reason or shall have been determined adversely to the Institutional Trustee or to such holder of Debentures, then and in every such case the Trust, the Institutional Trustee and the holders of the Debentures shall severally and respectively be restored to their former positions and rights hereunder and thereafter all rights, remedies and powers of the Institutional Trustee shall continue as though no such proceedings had been taken."

Article Fourteen, Section 2 provides:

"Subject to the terms and provisions contained in this Section, and not otherwise, the Trust and the Institutional Trustee may execute such indenture or indentures supplemental hereto as shall be by the Trust deemed necessary or desirable for the purpose of modifying or amending in any particular not provided for under Section 1 of this Article Fourteen any of the terms or provisions contained in this Indenture or in any supplemental indenture or in any Debenture, with the consent of holders of fifty-one per centum (51%) in aggregate principal amount of the Debentures at the time outstanding (subject to the provisions of Section 2 of Article Eight); provided, that nothing herein contained shall permit, or be construed as permitting (a) the extension of the maturity of any Debenture issued hereunder, or the reduction in the rate of interest thereon, or any other modification in the terms of payment of principal or interest, without the express consent of the holder of such Debenture, * * *."

Sec. 316 of the "Trust Indenture Act of 1939," 15 U.S.C.A. § 77ppp., provides:

"(a) The indenture to be qualified may contain provisions—

"(1) authorizing the holders of not less than a majority in principal amount of the indenture securities at the time outstanding (A) to direct the time, method, and place of conducting any proceeding for any remedy available to such trustee, or exercising any trust or power conferred upon such trustee, under such indenture, or (B) on behalf of the holders of all such indenture securities, to consent to the waiver of any past default and its consequences; or

"(2) authorizing the holders of not less than 75 per centum in principal amount of the indenture securities at the time outstanding to consent on behalf of the holders of all such indenture securities to the postponement of any interest payment for a period not exceeding three years from its due date.

"For the purposes of this subsection and paragraph (3) of subsection (d) of section [315,] in determining whether the holders of the required principal amount of indenture securities have concurred in any such direction or consent, indenture securities owned by any obligor upon the indenture securities, or by any person directly or indirectly controlling or controlled by or under direct or indirect common control with any such obligor, shall be disregarded, except that for the purposes of determining whether the indenture trustee shall be protected in relying on any such direction or consent, only indenture securities which such trustee knows are so owned shall be so disregarded.

"(b) The indenture to be qualified shall provide that, notwithstanding any other provision thereof, the right of any holder of any indenture security to receive payment of the principal of and interest on such indenture security, on or after the respective due dates expressed in such indenture security, or to institute suit for the enforcement of any such payment on or after such respective dates, shall not be impaired or affected without the consent of such holder, except as to a postponement of an interest payment consented to as provided in paragraph (2) of subsection (a), and except that such indenture may contain provisions limiting or denying the right of any such holder to institute any such suit, if and to the extent that the institution or prosecution thereof or the entry of judgment therein would, under applicable law, result in the surrender, impairment, waiver, or loss of the lien of such indenture upon any property subject to such lien." * * *

Sec. 317, 15 U.S.C.A. § 77qqq. "(a) The indenture to be qualified shall contain provisions—

"(1) authorizing the indenture trustee, in the case of a default in payment of the principal of any indenture security, when and as the same shall become due and payable, or in the case of a default in payment of the interest on any such security, when and as the same shall become due and payable and the continuance of such default for such period as may be prescribed in such indenture, to recover judgment, in its own name and as trustee of an express trust, against the obligor upon the indenture securities for the whole amount of such principal and interest remaining unpaid; and

"(2) authorizing such trustee to file such proofs of claim and other papers or documents as may be necessary or advisable in order to have the claims of such trustee and of the indenture security holders allowed in any judicial proceedings relative to the obligor upon the indenture securities, its creditors, or its property.

"(b) The indenture to be qualified shall provide that each paying agent shall hold in trust for the benefit of the indenture security holders or the indenture trustee all sums held by such paying agent for the payment of the principal of or interest on the indenture securities, and shall give to such trustee notice of any default by any obligor upon the indenture securities in the making of any such payment." * * *

Sec. 318, 15 U.S.C.A. § 77rrr. "(a) The indenture to be qualified shall provide that if any provision thereof limits, qualifies, or conflicts with another provision which is required to be included in such indenture by any of sections [310 to 317,] inclusive, *such*

*required provision shall control.* (Italics ours)

"(b) The indenture to be qualified may contain, in addition to provisions specifically authorized under this title to be included therein, any other provisions the inclusion of which is not in contravention of any provision of this title."

■ It is obvious that Sec. 316(a) is a permissive provision and that Sec. 316(b) is a mandatory provision.

Section 7 of Article Seven of the Indenture is based on Sec. 316(a) (1).

Sec. 317 is a mandatory provision and is stated in Section 3 of Article Seven of the Indenture. It is my opinion that the mandatory provisions of the Act control over the permissive provisions.

The Indenture does not contain a provision such as is authorized by Sec. 316(a) (2) "authorizing the holders of not less than 75 per centum in principal amount of the indenture securities at the time outstanding to consent on behalf of the holders of such indenture securities to the postponement of any interest payment for a period not exceeding three years from its due date."

In the instant case the holders of a majority in principal amount of debentures at the time outstanding are attempting to force the postponement of interest payment for a period exceeding three years from its due date and argue that Section 7 of Article Seven of the Indenture gives a majority in principal amount of debenture holders the right to control the bringing of any suit for the benefit of debenture holders and that such a provision is a very common and usual provision in trust mortgages. They cite in support of this contention many cases which were decided prior to the passage of the "Trust Indenture Act of 1939," and which are not especially helpful in construing Sec. 316.

■ Careful study of the "Trust Indenture Act of 1939" which is an amendment of the "Securities Act of 1933," 15 U.S.C.A. § 77a et seq., and the Indenture leads me to the conclusion that the action of holders of a majority in principal amount of debentures at the time outstanding in attempting to postpone and waive default of the interest payment is directly contrary to the provisions of the Act expressly prohibiting impairment of the right of a debenture holder to receive payment of interest, except where 75 per centum or more of the debenture holders consent to postponement thereof. Sec. 316(a) (2). Such action by the majority in principal amount is, likewise, contrary to the mandatory provisions of Sec. 316(b).

The interveners in their reply brief state at p. 13:

"* * * A decision by this court with respect to an interpretation of the Trust Indenture will in no way affect an interpretation of the provisions of the Act. This court is faced with a simple problem. The Trust Indenture executed by the Trust and the Institutional Trustee sets forth specifically the rights, powers and duties of the parties. To go outside of the instrument in order to determine what was the intention of the parties may produce a result actually in conflict with the intention of the parties as manifested by the Indenture."

■ I find no merit in this argument because the Indenture to be qualified must comply with Sec. 316. An interpretation of the Indenture qualified under the Act necessarily involves an interpretation of the Act. Certain provisions of the Indenture conform to the Act which was enacted to provide protection for persons who invest in securities issued thereunder.

In the report of the Committee on Interstate and Foreign Commerce of the House of Representatives on the Trust Indenture Bill of 1939, June 30, 1939, House of Representatives Report No. 1016, 76th Congress, 1st Session, we find at p. 36:

"10. Postponements of interest payments. —The effect of the changes in section 316(a) is to permit the holders of 75 percent in principal amount of the outstanding bonds to consent to interest postponements for not more than 3 years. The limit under the corresponding section of the Senate Bill was 1 year."

Under D, Analysis by Sections, we find at p. 56:

872

"Section 316. Directions and Waivers by Bondholders; Prohibition of Impairment of Holder's Right to Payment.

"Subsection (a) specifically permits the inclusion in the indenture of provisions authorizing the holders of a majority of the outstanding bonds (1) to direct the time, method, and place of exercising any trust or power conferred upon the trustee, or of conducting any proceeding for any remedy available to the trustee; or (2) to consent to the waiver of any past default, and its consequences. The Indenture may also contain provisions authorizing the holders of 75 percent or more in principal amount of the outstanding bonds to consent to the postponement of any interest payment for not more than 3 years from its due date. Provision is made with respect to the exclusion of bonds owned by the obligor or persons standing in a control relation to it, in determining whether the required percentage of bonds has concurred in any such direction or consent.

"*Under subsection (b), the indenture must provide that, except as to an interest postponement consented to as provided in subsection (a), the right of any indenture security holder to receive his principal and interest when due and to bring suit therefor may not be impaired without his consent.* Evasion of judicial scrutiny of the fairness of debt-readjustment plans is prevented by this prohibition. Until comparatively recently, a prohibition of this sort was perfectly standard in note and bond indentures. In many States it is necessary in order to preserve the negotiability of the notes or bonds; in others it is necessary if the notes or bonds are to be legal investments for insurance companies, savings banks, and the like. This prohibition does not prevent the majority from binding *dissenters by other changes* in the indenture or by a waiver of other defaults, and the majority may of course consent to alterations of its own rights." (Italics ours)

The right of the indenture security holder, under the facts here, to his interest when due is absolute. Said House of Representatives Report No. 1016, supra,

clearly indicates the intent of Congress in this regard.

The prayers of the interveners are denied and dismissed.

Judgment may be entered for the plaintiff for $122,605.11 and costs.