## DELATOUR et al. v. MEREDITH et al.

### No. 396.

Circuit Court of Appeals, Second Circuit.
July 21, 1944.

Lloyd B. Kanter, of Brooklyn, N. Y. (Lewis, Marks & Kanter, of Brooklyn, N. Y., and Julius Silver and Jack L. Rappaport, both of New York City, on the brief), for appellants Bondholders' Protective Committee.

Percival E. Jackson, of New York City (Archibald Palmer, of New York City, on the brief), for appellants John Vanneck and others.

Eugene J. Keogh, of New York City (Halpin & Keogh, Edward S. St. John, and Charles J. Zinn, all of New York City, on the brief), for appellees Hunter L. Delatour and Raymond Reisler, as trustees, and

Jerome Thralls, as additional trustee, of Realty Associates Securities Corporation, debtor.

Abraham Feinstein, of Brooklyn, N. Y. (Herrick & Feinstein and Arthur L. Feinstein, all of Brooklyn, N. Y., on the brief), for Bondholders' Directors Committee.

James B. Alley, of New York City (Auchincloss, Alley & Duncan and Charles R. Lowther, all of New York City, on the brief), for debtor.

George Zolotar, of New York City (Roger S. Foster, Sol., of Philadelphia, Pa., and Kiva Berke, of New York City, on the brief), for Securities and Exchange Commission.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This appeal brings up the validity of another order of the district court in the proceedings to reorganize Realty Associates Securities Corporation, one aspect of which we had under consideration in Meredith v. Thralls, 2 Cir., 144 F.2d 473, decided July 13, 1944. On November 10, 1943, five days before they were to file the list of the debtor's creditors and stockholders now required under Chapter X of the Bankruptcy Act, § 164, 11 U.S.C.A. § 564, the trustees appointed for the debtor by the court applied under § 166, 11 U.S.C.A. § 566, for an order impounding the list and prescribing terms for its use and inspection. Their petition alleged that promulgation of "the plan" by the disinterested trustees would obviate the necessity for many communications with the bondholders and that such an order would expedite the administration of the estate, preserve for the court that degree of control which Congress intended it should have over reorganization proceedings, and provide those who have reason to communicate with the bondholders, creditors, and stockholders with a manner of making such reason known to the court in making application to obtain authority to use such list for that purpose. The court immediately entered an order impounding the list; and then, after a hearing at which the Securities and Exchange Commission appeared pursuant to § 208, 11 U.S.C.A. § 608, and joined with bondholders in opposing the order, the court granted the petition and entered the order appealed from under date of January 7, 1944. In its opinion justifying the order, the sole ground which the court advanced was its fear that otherwise the bondholders might be induced to sell their securities for less than their true worth. In addition to impounding the list, the order provided that use of the list for the purpose of sending communications to security holders should be permitted only upon separate applications to the court to authorize specific communications, which applications should be on notice to all persons appearing in the proceeding and should request approval by the court of the proposed communications. The Bondholders' Protective Committee and several of the 2,300 individual bondholders of the debtor bring the present appeal, and the Securities and Exchange Commission has again appeared, urging reversal of the decision below.

The applicable statutes are all a part of the Chandler Act of 1938. Section 164 directs that, where a debtor is not continued in possession, the trustee shall prepare and file in court a list of the creditors and stockholders showing the nature of their holdings or claims and their addresses; while § 165, 11 U.S.C.A. § 565, grants power to the court to compel disclosure of such lists from third parties when they are in the possession of neither the debtor nor its trustee. Section 166, under which the court assumed power for the order, provides that the court "may, upon cause shown, direct the impounding" of any list filed under § 164 or § 165, but "shall permit their inspection or use * * * upon such terms as the court may prescribe" by any creditor or stockholder who acquired such status three months or more before the filing of the reorganization petition.

That the controversial order is appealable cannot be doubted. As pointed out in Albin v. Cowing Pressure Relieving Joint Co., 317 U.S. 211, 212, 63 S.Ct. 170, 171, 87 L.Ed. 212, § 24, sub. a, of the Chandler Act, 11 U.S.C.A. § 47, sub. a, makes appealable as of right virtually all interlocutory decrees in proceedings in bankruptcy such as we have here; and this order is surely of enough substance, denying as it does appellants' rights to communicate with other security holders with-

out censorship by the court, to distinguish it from the few exceptions to the general rule of appealability, limited as they are to orders of a purely preliminary nature in advance of actual judicial action. See In re Hotel Governor Clinton, 2 Cir., 107 F.2d 398; Federal Land Bank of Springfield v. Hansen, 2 Cir., 113 F.2d 82, 84, 85. Turning then to the merits, we are of the opinion that there was no sufficient cause within the meaning of § 166 to justify the impounding order. A short survey of the background of that section is, we think, persuasive to that conclusion.

■ There is no doubt but that the legislation was developed as part of a reform program based on the view that receiverships and reorganizations were strictly inside affairs under the control of managements and investment bankers, wherein the average stockholder and creditor knew little of what was going on and there was no free participation by all those interested in the company in order to evolve the most equitable final arrangement. The key to this situation was held to be the sole possession by those on the inside of the lists of stockholders and creditors. Refusal to disclose these lists enabled the management to forestall any successful organization in opposition to its plan except through the almost prohibitively costly and, in any event, dubiously effective medium of extensive newspaper advertisements aimed at rallying together scattered minority interests. See testimony of Commissioner (now Mr. Justice) Douglas, Hearings before House Judiciary Committee on H. R. 6439 (amended and reported as H.R. 8046), 75th Cong., 1st Sess., 1937, 188. Recognizing the fundamental injustice of such a practice, the regulatory legislation of the past decade has included various corrective steps. First, the Securities and Exchange Commission, pursuant to the powers conferred by the Securities Act of 1933, 15 U.S.C.A. § 77a et seq., made available for public inspection the lists of security holders possessed by committees required to file registration statements with the Commission. Then, in 1934, § 77B, sub. c (4), of the Bankruptcy Act, 11 U.S.C.A. § 207, sub. c (4), predecessor of the present Chapter X, permitted the court in its discretion to order the debtor or its trustee to file lists. In construing this section as giving the general right of inspection and use except under circumstances which called for a discretionary refusal by the judge, the courts fully recognized the legislative objective of free communication among security holders for purposes of organization and exchange of views. In re Bush Terminal Co., 2 Cir., 78 F.2d 662, 664; Herbert V. Apartments Corp. v. Mortgage Guarantee Co., 3 Cir., 98 F.2d 662, 667, certiorari denied Mortgage Guarantee Co. v. Herbert V. Apartments Corp., 305 U.S. 640, 59 S.Ct. 107, 83 L.Ed. 412; J. S. Farlee & Co. v. Springfield-South Main Realty Co., 1 Cir., 86 F.2d 931. Further, § 77 of the Bankruptcy Act, 11 U.S.C.A. § 205, dealing with railroad reorganizations, was amended in 1935 to include comprehensive list provisions, § 77, sub. c (4, 5), 11 U.S.C.A. § 205, sub. c (4, 5). So, also, a statute was passed in New York in 1936, permitting holders of defaulted bonds to obtain lists upon application to the state court. N. Y. Civil Practice Act, Art. 84-A, §§ 1469-a to 1469-f.

■ The provisions of the Chandler Act quoted above mark the culmination of these prior efforts. For the first time the filing of lists is made mandatory; the only exception is that of § 166, which permits impounding "upon cause shown." But if the obvious Congressional intent of providing facilities for free communication among security holders is not to be emasculated, the exception must not be so broadened in judicial interpretation as to overbear the general rule. It is clear that only "in the exceptional case" were the provisions of § 166 intended to be utilized, Sen.Rep. No. 1916, 75th Cong., 3d Sess., 1938, 29; and the courts should examine closely any petition for an impounding order to ascertain whether the situation is so unusual as to justify application of the exception. In the present case there surely was no occasion for taking this drastic step. The causes alleged in the petition were all general and to the effect that the reorganization would run more smoothly without ouside interference. That these allegations ran directly in the face of the purposes of the statute must have been recognized by the court below, for the grant of the petition was actually made for the new cause, conceived by the court, that there was danger that the security holders might be persuaded to sell their securities for less than their true worth. Such a rationaliza-

tion, however, is also of doubtful merit. This is indicated by the fact that the bonds in question were quoted in the over-the-counter market in New York City, and bondholders had hence only to look at current quotations to find what their bonds would bring in the market place. While the recent regulatory legislation was clearly intended as protection for the general investing public, see Charles Hughes & Co. v. S. E. C., 2 Cir., 139 F.2d 434, certiorari denied 321 U.S. 786, 64 S.Ct. 781; Baird v. Franklin, 2 Cir., 141 F.2d 238, it seems a bit extreme for a court to feel obligated to deny access to investors under these circumstances. In any event, if there is real need of such protection, it would seem that it could be obtained by other means less directly destructive of the statutory objective. It is doubtful whether there is sufficient cause here for denial of use of the lists even under the terms of the old § 77B, sub. c (4), as construed in Re Bush Terminal Co., supra. Surely there is no warrant for it under the more specific terms of Chapter X.

Hence we consider the entire order entered below to be improper. A special infirmity, however, attaches to the second part of it, providing for the submission to the court's censorship of all proposed communications by security holders. Section 166 requires, after the lists are impounded, that every bona fide security holder have a continued right to their use. This right is granted in absolute terms; the court can place restrictions only upon the manner in which it shall be exercised. Thus, the court, on a showing of grounds therefor, might provide that all communications be given to the trustee, who in turn would mail them to the various names on the list, thereby fulfilling the dual aims of keeping secret the lists and maintaining free facilities for communication between security holders. Or the court might enter an order forbidding any one using the list from making use of the knowledge to buy up claims and requiring a written engagement by such person to the trustees that he would not so use it. But the present order went far beyond any such requirements. The court reserved to itself the power finally to determine which security holders should be granted the use of the lists, and in so doing went contrary to the statute.

Order reversed.