**In the Matter of W. T. GRANT COMPANY, Bankrupt.**

**Bankruptcy No. 75 B 1735.**

United States Bankruptcy Court, S. D. New York.

Sept. 15, 1980.

Weil, Gotshal & Manges, New York City, for trustee; Harvey Miller & Richard Krasnow, New York City, of counsel.

Brewer & Soeior, New York City by Bradley R. Brewer, New York City; Robson & Miller, New York City by Morton Robson, New York City; Bader & Bader, White Plains, N. Y. by I. W. Bader, White Plains, N. Y., for debentureholders.

Sherman & Sterling, New York City by Gary Lyons, New York City, for Citibank.

Milbank, Tweed, Hadley & McCloy, New York City by Howard Seife, New York City, for Chase Manhattan Bank.

Davis, Polk & Wardwell, New York City by Ogden Lewis, New York City, for Morgan Guaranty Bank.

Stroock & Stroock & Lavan, New York City by Jack Gross, New York City, for Morgan, et al.

Whitman & Ransom, New York City by William Kahn, New York City, for indenture trustee.

## MEMORANDUM AND ORDER

JOHN J. GALGAY, Bankruptcy Judge.

On July 23, 1980, the trustee for the bankrupt estate of W. T. Grant Co. brought an action to restrain defendants, five holders of bankrupt's 4¾% convertible subordinated debentures, from disseminating an allegedly misleading communication to approximately 2300 other holders of the debentures. As a part of that action, the trustee seeks leave of this court to preliminarily enjoin the defendants from disseminating the communication.

After careful examination of the record and a balancing of the equities, this Court concludes that the trustee has satisfied the standard for injunctive relief. The motion for a preliminary injunction should be granted, and defendants should be restrained from disseminating the communication until conditions permit defendants to disseminate information without prejudice to the estate.

Plaintiffs seek to preliminarily enjoin the proposed communication because it constitutes a solicitation which presents biased information through misleading statements and material omissions. Plaintiffs claim that this biased information would give rise to immediate and irreparable harm to the Debentureholders and cause interference with the trustee's administration of bankrupt's estate. They also claim that the proposed communication would violate the prohibitions against proxy solicitations in Bankruptcy Rule 208, the prohibitions against misleading or incomplete solicitations in the Securities and Exchange Act of 1934, and the requirement of Indenture Trustee approval of communications in Section 311 of the Trust Indenture Act of 1939. Plaintiffs also assert that dissemination is not shielded from these regulatory provisions by First Amendment protections because the communication constitutes unprotected commercial speech. Further, plaintiffs request injunctive relief to prevent defendants from augmenting the record on appeal in contravention of procedural and ethical standards.

Defendants seek to disseminate the communication while appeal of the order is still pending. They maintain that no harm will be caused by dissemination of the communication and that its content is not materially misleading. Defendants also assert that they do not need permission from the Indenture Trustee to disseminate information to Debentureholders because the provisions of the Trust Indenture Act do not apply to them.

This Court concludes that a preliminary injunction should be granted to restrain defendants from disseminating the proposed communication. The communication constitutes an unlawful solicitation pursuant to the Bankruptcy Rules, the Securities and Exchange Act of 1934 and the Trust Indenture Act. It contains misleading information and material omissions and improperly seeks to expand the record on appeal. Dissemination of the communication would inevitably bias the Debentureholders' decision about the Offer and cause prejudice to the estate by impairing the trustee's administrative function.

The bankrupt, W. T. Grant Co. ("Grant") originally filed a petition under Chapter XI, Section 322 of the Bankruptcy Act on October 2, 1975 and was adjudged a bankrupt on April 13, 1976. On April 18, 1979, Charles G. Rodman, trustee for the bankrupt, ("Trustee") applied to this Court for authorization and approval of a proposed offer ("Offer") of compromise and settlement to

be disseminated to the holders of Grant 4¾% Convertible Subordinated Debentures due 1990 pursuant to an indenture agreement of April 15, 1971. By order of this Court dated February 20, 1980, as amended March 27, 1980 ("Order"), the Offer was authorized and approved. The terms of paragraphs 45 and 46 of the application of the Offer prohibit the trustee from disseminating the Offer to holders of these debentures until all appeals of the Order have been exhausted.

On February 28, 1980 eleven objecting Debentureholders filed a notice of appeal from the Order. This appeal was docketed with the United States District Court for the Southern District of New York.

On July 9, 1980, defendants' attorney sent to Judge Connor a copy of a proposed communication ("Solicitation") from his clients, a committee of five of the objecting Debentureholders who appealed the Order ("Objectants"), to other holders of Grant 4¾% debentures ("Debentureholders"). The attorney stated in a cover letter that the defendants intended to distribute this material "on or about August 1, 1980." The express purpose of the communication was to solicit "written evidence of support from all holders of 4¾% debentures who share [their] position in opposition to the proposed settlement [and to] have the results [of these responses] entered into the official court record of the proceeding." (Trustee's Exhibit 1 B at 2.). The eight page letter ("Letter") describing the intentions of the Committee of Objectants stresses the importance of obtaining written authorizations of support from other Debentureholders and makes provisions for them to retain the defendants' attorneys as their counsel. The Letter is supplemented by a response sheet ("Response") on which Debentureholders may indicate support of either the Offer or the defendants' position in opposition to the Offer.

The Response additionally requests Debentureholders to indicate whether or not they intend to attend a planned meeting of the Objectants' Committee on September 9, 1980.

Section 311 of the Bankruptcy Act grants exclusive power, including power over the distribution of assets among creditors, to the original bankruptcy tribunal.[1] The exclusivity of this court's jurisdiction is clear, and Objectants' appeal of the Order does not interfere with the power to grant injunctive relief. This Court thus assumes jurisdiction to determine whether the proposed Solicitation includes misleading statements and material omissions, and if so, whether it will cause such harm to Debentureholders as warrants protection by injunctive relief.

In order to determine whether or not to issue a preliminary injunction restraining dissemination of the Solicitation, this Court applies the Second Circuit's two–alternative test enunciated in *Jackson Dairy, Inc., v. H. P. Hood and Sons*, 596 F.2d 70 (1979) which requires a showing of

(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

*Id.* at 72. See Mulligan, *Foreward–Preliminary Injunction in the Second Circuit*, 43 Brooklyn L.Rev. 831 (1977). The purpose of a discretionary grant of this extraordinary relief is "to preserve the status quo between the parties pending final determination of the merits of the action." *Diversified Mortgage Investors v. U. S. Life Title Insurance Co.*, 544 F.2d 571, 576 (2d Cir. 1976). The need to maintain the status quo arises when irreparable harm from any change is imminent.

Proof of irreparable injury, i. e., harm that cannot otherwise be measured in dam-

---

1. 11 U.S.C. § 311, Bankruptcy Act of 1978, Pub.L.No.95–598, tit. I, 92 Stat. 2549 (1978), hereinafter referred to as 11 U.S.C., provides: "Where not inconsistent with the provisions of

this chapter, the court in which the petition is filed shall, for the purposes of this chapter, have exclusive jurisdiction of the debtor and his property, wherever located."

ages, has always been necessary to the issuance of injunctive relief. *Jackson Dairy, supra,* 596 F.2d 70 at 73. The trustee has satisfied the first prong of the *Jackson Dairy* test by demonstrating that the harm that flows from dissemination of misleading information to Debentureholders is to prevent them from making an informed decision concerning the proposed Offer.

It is clear that the proposed communication requesting written support of defendants' position on the Offer is a proxy solicitation, and as such must conform to the bankruptcy law and securities law. Bankruptcy Rule 208(a) defines proxies and solicitations as follows:

(a) *Definitions.*

(1) *Proxy.* A proxy includes a power of attorney, proof of claim, or other writing authorizing any person who does not then own a claim to vote the claim or otherwise act as the owner's attorney in fact in connection with the administration of an estate of bankruptcy.

(2) *Solicitation of a proxy.* The solicitation of a proxy is any communication, other than one from an attorney to a regular client who owns a claim or from the attorney to the owner of a claim who has requested the attorney to represent him, by which a creditor is asked, directly or indirectly, to give a proxy after or in contemplation of the filing of a petition by or against the bankrupt.

The Securities and Exchange Act of 1934 ("1934 Act") also governs solicitation of proxies from holders of registered securities. Both § 14(a), forbidding deceptive proxy statements and Rule 14a–9 promulgated thereunder, prohibiting solicitations containing misleading statements or material omissions, of the 1934 Act are designed to insure full disclosure in proxy solicitations. In any such solicitation, complete disclosure must be made of all facts concerning the matters on which holders are asked to vote so that they may have the benefit of the facts in formulating their investment decisions. See *Affiliated Ute*

*Citizens v. United States,* 406 U.S. 128, 151, 92 S.Ct. 1456, 1470, 31 L.Ed.2d 741 (1972).

Preliminary injunctions are commonly granted to avoid injury from violations of the 1934 Act provisions. *Sonesta International Hotels Corp. v. Wellington Associates,* 483 F.2d 247, 250 (1973). In a case involving § 14(a) and Rule 14a–9 violations, the Supreme Court found that injunctive relief was readily available to guard against a defect in a proxy solicitation because the "use of a solicitation that is materially misleading is itself a violation of the law." *Mills v. Electric Auto–Lite Co.,* 396 U.S. 375, 383, 90 S.Ct. 616, 621, 24 L.Ed.2d 593 (1970).

The trustee has shown that the defendants' Solicitation contains misleading statements and material omissions which would influence Debentureholders in deciding whether to accept the Offer. For instance, although the Solicitation evinces defendants' belief that the Debentureholders can recover more money from the bankrupt estate than contemplated by the Offer, it provides no basis for this conclusion. The defendants do not point out that rejection of the Offer can result in Debentureholders recovering no money at all because the provisions of the indenture under which their debentures were issued subordinate their claims to those of senior creditors. (Trustee's Brief at 5).

The solicitation contains numerous other omissions and misstatements. Even the defendants' attorney admits that the solicitation may fail to disclose certain facts. (Transcript at 80–82). The most obvious omission is the Solicitation's failure to mention that defendants' objections to the Offer raised in their brief on appeal have already been considered and rejected by the Order of this Court. The Solicitation neither includes nor mentions the Order, which contains information vital to a full understanding of the legal basis for the Offer. Furthermore, Objectants' solicitation of objections to the Offer clearly contemplates a successful appeal of the Order. Since the Order finds that Debentureholders' claim is subordinate to senior debt, the findings of

the Order must necessarily be rejected by the District Court in order for Objectants to recover more than the promised 14%.

Dissemination of the Letter would inevitably result in irreparable harm to the Debentureholders. The nature of the harm is this: if Debentureholders were to join Objectants in opposition to the Offer, they might recover more than 14% but they would also face the distinct possibility of recovering absolutely nothing if their claims proved insubstantial. If Debentureholders make a judgment to oppose the Offer on the basis of the misleading Solicitation, and then receive less than 14% or nothing on their claims, they will have no further means of recovery. They will thus be irreparably harmed, i. e., they will have forever lost the unique opportunity as investors to make an informed judgment with respect to the Offer, extended only once, for settlement of their claims in bankruptcy.

The trustee would also be harmed if the Debentureholders are harmed because he would be prevented from effectuating his role of equitably administering the proceeds of the estate to Debentureholders and other creditors. The trustee is responsible for insuring a fair and equitable administration of the estate in a manner consistent with "the best interests of creditors." 11 U.S.C. §§ 1102 and 1502.

■ To insure fair and equitable administration of the estate, the trustee must provide creditors with sufficient information regarding the possibility of recovery on their claims, as well as with a balance of information about the claims. He must protect them from any information which would unduly bias their understanding, and thus he owes an administrative duty to creditors as well as to the estate.[2] The trustee cannot fairly fulfill that duty if he is forced to accommodate the inequities which would inevitably result from a mis-

leading Solicitation.[3] Unfair solicitation of claims, and the time necessary for litigating these claims, would cause further undue delay in the administration of the already protracted case. The attendant expense of more litigation would also bring considerable burden to bear on the eventual satisfaction of creditors' claims.

The Indenture Trustee would correspondingly be harmed by dissemination of the Solicitation. The Indenture Trustee is a fiduciary of the Debentureholders, and is obligated to protect them from attempted violations of the Trust Indenture Act. By violating the Act, dissemination of the Solicitation would harm the Indenture Trustee by effectively precluding him from performing his role.

The harm to Debentureholders cannot be cured by the antidote of a subsequent dissemination of the complete factual and legal material relevant to the Offer, because Debentureholders' minds will already have been poisoned by the biased information contained in the Letter, i. e. Debentureholders could not later retrieve the opportunity to make an informed judgment. Neither can the harm be cured by a subsequent award of money damages to redress the financial loss to Debentureholders. They will have already been deprived of a unique opportunity which is their right as investors: the opportunity to formulate an investment decision on the basis of accurate and complete information at the time of the proposed undertaking. Thus, injunctive relief is necessary to preserve Debentureholders' rights.

The Court has defined Commercial speech as "expression related solely to the economic interests of the speaker and its audience." *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York.*[4] The Court has further drawn "the 'commonsense distinction between speech pro-

---

**2.** 1 Collier on Bankruptcy ⸀ 323.01 at 323-2 (15th ed. 1979).

**3.** *Id.* ⸀ 3.01 at 3–18 to 3–19.

**4.** *Central Hudson Gas v. Public Service Commission,* —— U.S. —— at ——, 100 S.Ct. 2343 at 2349, 65 L.Ed.2d 341 (1980) *quoting Ohralik v. Ohio State Bar Assn.,* 436 U.S. 447, 455–456, 98 S.Ct. 1912, 1918–1919, 56 L.Ed.2d 444 (1978).

posing a commercial transaction, which occurs in an area traditionally subject to government regulation, and other varieties of speech' ".[5]

■ The Solicitation falls within two of the categories of commercial communications which are commonly regulated by means of prior restraint without encroaching on First Amendment freedoms: corporate proxy statements[6] and exchange of information about securities.[7] So to allow Objectants' claim that the type of expression in the solicitation is protected would "invite dilution [of the Constitutional protection], simply by a leveling process of the First Amendments' guarantee to the latter kind of speech"[8] because speech "must concern lawful activity and not be misleading"[9] in order to merit protection. Therefore, the Solicitation remains subject to regulatory provisions and should be preliminarily enjoined from violating those provisions.

In *Ohralik v. Ohio State Bar Association*, the Supreme Court has held that states have the power to prohibit in–person solicitation by lawyers who make purely commercial offers of legal assistance to lay persons because such solicitations are "business transactions", and constitute speech which warrants lesser constitutional protection because it "occur in an area traditionally subject to government regulation."[10] The Court also explicitly stated that a "lawyer's procurement of remunerative employment is a subject only marginally affected with First Amendment concerns."[11]

Cases which have held that solicitations are entitled to First Amendment protections involve solicitations exclusively for political or associational concerns.[12]

Although the commercial nature of Objectants' speech does not automatically remove the speech from First Amendment protection, the level of judicial scrutiny applied to preserve these protections is considerably lower than forms of expression involving political or associational purposes. Objectants are not "engaged in solicitation ... as a means of effective political expression and association."[13] Instead their only purpose is to advance their own commercial interests. Therefore, the Solicitation need not be accorded the same "protection reserved for associational freedoms."[14] Restraint of the solicitation as commercial expression is, thus, appropriate.

The trustee correctly asserts that the Letter to the Debentureholders does not fall within the scope of constitutionally protected expression and association, contrary to Objectants' assertion that the Letter is entitled to freedom from restraint or lacks merit because the purpose of the expression is commercial in nature.

Cases which have held that solicitations are entitled to First Amendment protections focus on solicitations exclusively for political or associational purposes. In *NAACP v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963), solicitation of

5. *Id.*

6. *Mills v. Electric Auto–Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970).

7. *SEC v. Texas Gulf Sulfur Co.*, 401 F.2d 833 (2d Cir. 1968), *cert. denied*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969).

8. *Ohralik v. Ohio, supra* note 4, 436 U.S. at 456, 98 S.Ct. at 1918.

9. *Central Hudson Gas, supra* note 4 at ——, 100 S.Ct. at 2351.

10. *Ohralik v. Ohio, supra* note 4, 436 U.S. at 456, 98 S.Ct. at 1918.

11. *Id.*

12. For instance in *NAACP v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963), solicitation of clients was protected by the First Amendment because the civil rights organization had an important right "to engage in association for the advancement of beliefs and ideas." The Supreme Court also granted protection to a solicitation by ACLU attorneys in *In re Primus*, 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978), where the communication of the solicitation was "undertaken to express personal political beliefs and to advance the civil liberties objectives of the ACLU rather than to derive financial gain." *Id.* at 422, 98 S.Ct. at 1900.

13. *In re Primus*, supra, at 431, 98 S.Ct. at 1904.

14. *Id.*

clients was protected by the First Amendment because the civil rights organization had an important right "to engage in association for the advancement of beliefs and ideas." *NAACP v. Alabama*, 357 U.S. 449, 460, 78 S.Ct. 1163, 1171, 2 L.Ed.2d 1488 (1958) quoted in *Button, supra* 371 U.S. at 430, 83 S.Ct. at 336. The Supreme Court also granted protection to a solicitation by ACLU attorneys in *In re Primus*, 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978), where the communication of the solicitation was "undertaken to express personal political beliefs and to advance the civil liberties objectives of the ACLU rather than to derive financial gain." *Id.* at 422, 98 S.Ct. at 1900.

The solicitations in *Button* and *Primus* can easily be distinguished from unprotected forms of communication to solicit clients for commercial purposes because they were solicitations for associational/political purposes, and they were "not [an] in–person solicitation for pecuniary gain" or "an offer predicated on entitlement of any monetary recovery." *Id.*

■ The Letter constitutes a proxy solicitation, and its dissemination would violate Rule 208 of the Bankruptcy Rules governing proxy solicitations, which provides that "a proxy includes a *power of attorney . . . or other writing*" which authorizes a non–owner "to vote [a] claim or otherwise act as the owner's attorney . . . *in connection with the administration of an estate in bankruptcy*" (emphasis added). Fed.R.Bankr. 208(a)(1). Rule 208 also provides that:

"the solicitation of a proxy is any communication, other than one from an attorney to regular client who owns a claim or from an attorney to owner of a claim who has requested the attorney to represent him, by which a creditor is asked, directly or indirectly, to give a proxy after or in contemplation of the filing of a petition by or against the bankrupt." *Id.* Bankr.R. 208(a)(2).

The Rules expressly prohibit "*solicitation . . .* (4) *by* or on behalf of *an attorney at law* ; or (5) by or on behalf of a transferee of a claim for collection only" (emphasis added). *Id.* Bankr.R. 208(c). Objectants' attorneys would thus violate Rule 208(c)(4) by disseminating the solicitation Letter. The Letter informs Debentureholders:

"if you are interested in retaining our attorneys to represent you, you may send a request on a separate sheet of paper to the Committee at the above address, and we will send you the necessary information." (Letter at 7).

Additionally, the response instructs Debentureholders that they mail the following:

"Please send me information identifying the attorneys for the Objectants' Committee and indicating what action I may take to retain them to represent me (us) in connection with pending and subsequent litigation and/or negotiations arising from the claims of the W. T. Grant Debentureholders." (Response at 3).

The Solicitation clearly violates the applicable provisions of Rule 208 because attorneys' writings solicit Debentureholders, some of whom may additionally be transferees of claims only for purposes of collection.

■ Dissemination of the Solicitation would also undermine the intent of the securities laws which both the Trust Indenture Act and Rule 208 are designed to promote.

Rule 14a–9, promulgated under § 14(a) of the Securities and Exchange Act of 1934, and incorporated into the Trust Indenture Act, provides that no proxy solicitation shall be made if it is "false, or misleading with respect to any material fact necessary in order to make the statements therein not false or misleading." This rule has been interpreted to signify that:

"An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote.

. . . It does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused the investor to change his vote. What the standard does contemplate is a showing of the substantial likelihood that, under all cir-

cumstances, the omitted fact would have assumed actual significance in the deliberations of a shareholder." *TSC Industries v. Northway*, 426 U.S. 438, 439, 96 S.Ct. 2126, 2128, 48 L.Ed.2d 757 (1976). The test for material omissions must also be applied to Objectants' omission of the opinion and of the positions of proponents of the Offer, because it is information which is likely to have a significant effect on Debentureholders' judgment.

■ Even when investors' judgments are not affected, omissions are considered material when they "would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *Id.* at 449, 96 S.Ct. at 2132. Objectants' Letter can scarcely be called a "total mix", for it represents only a one–sided version of the facts and circumstances of the Offer.

Restraining the Objectants from disseminating the Solicitation before they have exhausted all other appeals is necessary to insure that information regarding the Offer will be communicated more fully and accurately. This purpose is consonant with regulatory powers and constitutional guarantees of free choice because

> "people will perceive their own best interests if only they are well enough informed and . . . the best means to that end is to open the channels of communication, rather than close them . . ."[15]

It is in Debentureholders' "best interests" to enjoin Objectants from disseminating fraudulent or misleading information. The rules against deceptive proxy solicitations support the grant of an injunction because they reflect the need for a flow of information which will enable investment decisions to systematically reflect relevant facts and expectations.[16]

■ Objectants will also violate the provisions of Bankruptcy Rule 806,[17] which provides that:

> [T]he appellant shall file . . . a designation of the contents for inclusion in the record on appeal and a statement of the issues he intends to present on the appeal. The record shall include the contents so designated and the findings of fact, conclusions of law, and orders entered thereon.

■ By disseminating the Solicitation Letter, Objectants admittedly seek to intentionally expand the record on appeal. The issue of whether communication with Debentureholders is appropriate is not the issue presently before the District Court.[18] By adding extraneous matter to the record, Objectants will violate Disciplinary Rule 7–106(C)(7) of the Code of Professional Responsibility. That Rule provides that:

> In appearing in his professional capacity before a tribunal, a lawyer shall not: Intentionally or habitually violate any established rule of procedure or of evidence.

Clearly, Objectants will also violate Rule 806 of the Rules of Bankruptcy Procedure, and in so doing will contravene the above professional standards. Objectants' intentional violation of the Disciplinary and Professional Rules would cause harm to Debentureholders who are solicited, and would harm the trustee and the estate by causing additional delay in administration.

Rule 806 is interpreted as precluding an appellant from adding extraneous matter to the record on appeal.[19] Objectants, bound

---

15. *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 770, 96 S.Ct. 1817, 1829, 48 L.Ed.2d 346.

16. Brudney, "Insiders, Outsiders and Informational Advantages Under the Federal Securities Laws," 93 Harv.L.Rev. 322, 344 (1979).

17. Fed.R.Bankr.P. 806, 11 U.S.C. Part VIII.

18. The question presented on appeal is whether the Bankruptcy Court committed an abuse of

discretion or plain error by approving the Offer and its dissemination to Debentureholders.

19. The weight of authorities interpret the thrust of bankruptcy Rule 806 to preclude an appellant from adding extraneous matter to the record on appeal. *See In re Castle Village Company*, 3 Bankr.Ct.Dec. 883 (Bankruptcy Court, S.D.N.Y. Lesser, B.J.), reversed (unpublished opinion, S.D.N.Y., January 27, 1978, Brient, J.); *In re W. T. Grant*, 432 F.Supp. 105, 107 (S.D.N.Y.1977); *In re M & M Transporta-*

by the parameters of Rule 806, are precluded from augmenting the record on appeal to the District Court.

■ Objectants' attorneys will also breach Rules 2–103(A) and 2–104(A) of the ABA Code of Professional Responsibility concerning solicitations by lawyers, and Disciplinary Rule 7–104(c)(7), involving intentional violations of rules of procedure.[20]

The Letter and the Response encourage Debentureholders to seek information about retaining Objectants' Attorneys to represent them regarding "pending . . . litigation as well as future negotiations," (Response at 3), Objectants' Attorneys have testified that they participated in drafting the Solicitation, and that they are pursuing their own economic interest via the Solicitation and related litigation (Tr. at 17–19, 27–29). These actions expressly violate Disciplinary Rules 2–103(A) and 2–103(C) which provide:

> (A) A lawyer shall not recommend employment, as a private practitioner, of himself, his partner, or associate to a non–lawyer who has not sought his advice regarding employment of a lawyer.
>
> \* \* \* \* \* \*
>
> (C) A lawyer shall not request a person or organization to recommend or promote the use of his services or those of his partner or associate, or any other lawyer affiliated with him or his firm, as a private practitioner . . .

Courts have often warned against the evils of solicitation because it tends to promote litigation, assertion of fraudulent claims, debasement of the legal profession, and potential harm to the solicited client in the form of overreaching, overcharging, underrepresentation and misrepresentation.[21] Prohibitions against solicitations are designed to protect against undue influence by attorneys on the ordinary investor, and Debentureholders would be subject to precisely the type of detrimental influence the Disciplinary Rules envision if the solicitation is not enjoined.

Objectants have narrowly and erroneously interpreted isolated language of the Trust Indenture Act to mean that the Act is inapplicable to them because its legislative purpose is to provide for full disclosure by the Indenture Trustee.[22] The Act, interpreted correctly, actually supports the trustee's position. Objectants' interpretation overlooks the express language of Section 303, which underlines the necessity for regulation of indenture securities in ". . . the interest of investors in debentures"[23] and provides that this interest is "adversely affected" when an indenture contains misleading provisions. The language of the Act also highlights the necessity for similar regulation of communications relating to indenture securities in the interest of investors, because

> "[p]ractices of the character above enumerated . . . unless regulated [in the areas of] the public offering of debentures . . . and certificates of interest or participation therein, by the use of . . . the mails, is injurious to the capital markets, to investors, and to the general public." *Id.* at 302(b).

Furthermore, it is the stated policy of the Act to "meet problems and eliminate the practices [enumerated above], connected with such public offerings." *Id.* The Act, properly understood provides for implementation of the protection of investors' interests through the express procedure of dissemination of communications under the supervision of the Indenture Trustee.

■ Section 312(b), 15 U.S.C. § 77*lll* (b), of the Trust Indenture Act of 1939 under

---

*tion Co.*, 437 F.Supp. 821, 823, n. 3 (S.D.N.Y. 1977).

20. *See Generally, Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792, 95 S.Ct. 2004, 2015, 44 L.Ed.2d 572 (1975). In *Goldfarb*, the Court identified the practice of law as commerce, altering the way lawyers are viewed by courts.

21. *See* Note, "Advertising Solicitation and the Professions Duty to make Legal counsel Available," 81 Yale L.J. 1181, n. 11 at 1184.

22. 15 U.S.C. § 77*lll* (1).

23. *Id.* at § 303.

which the Debentures are issued, expressly prohibits Objectants from mailing the Letter without application to the Indenture Trustee. The Objectants have made no such application, and so cannot properly request approval of a mailing from either this Court or the District Court.

The Trust Indenture Act provisions requiring Indenture Trustee approval and subsequent SEC review of applications for mailings are designed to afford maximum protection to investors. The Court must enforce this protection in order to insure equitable distribution of bankrupt's estate.

Objectants assert (in their Memorandum of Law in Opposition to Plaintiff's Motion for a Preliminary Injunction) that Section 312(b) of the Trust Indenture Act does not apply to the Letter because 312(b) merely enumerates the duties of the Indenture Trustee for the purpose of affording the applicants access to information, and is the only objective of the provision. However, the *absolute* access Objectants seek is contrary to the true purpose of the Act, to protect security holders from receiving information which, in the opinion of the Indenture Trustee and the Securities and Exchange Commission, is "contrary to the best interests of the indenture security holders," or "in violation of the law," [24] as in the kind of incomplete or misleading statements in the Letter.

▪ Since the Trustee's power to disseminate information to Debentureholders *is limited by his prior agreement* to the terms Application for the *Offer*, Objectants must be restrained at the present time from publishing their information. When the conditions are met pursuant to paragraphs 45 and 46 of the Offer, all parties can disseminate their information in such a manner that enables Debentureholders to make an informed judgment on the basis of all the facts. Otherwise, the balance of hardships would unfairly weigh in favor of defendants who could disseminate information to Debentureholders while plaintiffs were prevented from doing so. Defendants have asserted that they wish to maintain the status quo and have plaintiffs wait to disseminate the Solicitation, but, contradictorily, seek to upset this balance with dissemination of the solicitation.

Dissemination of the Letter would raise more than the mere possibility of interference with equitable distribution of bankrupt's estate: because it includes material omissions and misleading information, it creates a substantial likelihood of interference with Debentureholders' decision about the Offer.

The Trustee and the Indenture Trustee have their respective obligations to the estate and the Debentureholders, to insure that the Offer is transmitted to the Debentureholders in conjunction with all the appropriate factual material. Objectants are proposing to disseminate the Solicitation Letter with only the information which they have deemed relevant to their purpose. It is critical to the fair administration of the Offer that Debentureholders be equipped with information sufficient to make an informed judgment about the Offer. Thus, an injunction must issue in order to maintain the balance of information which facilitates this informed judgment to prevent dissemination of inadequate and misleading information.

There are "serious questions going to the merits," *Jackson Dairy, Inc., supra* p. ——, giving plaintiffs a "fair ground" for litigation to enjoin dissemination of the Solicitation. The Solicitation:

1) makes a material omission in its failure to make reference to the Order of February 20, 1980, in which the Offer of Compromise and Settlement was reached, and where Objectants had the opportunity to advise the position represented in the Letter;

2) fails to inform Debentureholders of the legal basis for accepting a settlement supposedly more favorable than the Of-

---

**24.** *Continental Bank & Trust of New York v. National Petroleum Trust,* 67 F.Supp. 859 (D.C. R.I.1949).

fer; it also fails to inform of the fact that Debentureholders might receive a smaller settlement or nothing at all;

3) omits the Indenture pre–requisite to litigation, the indemnification of Indenture Trustee for costs of litigation;

4) misleads by stating that Debentureholders can ignore the pre–requisite of the Trust Indenture Act by directing the Indenture Trustee to hold a formal meeting in order to receive the Debentures' instructions with respect to these positions on the Offer;

5) misleads by suggesting that "[r]equests for copies of their documents filed with the Bankruptcy Court or the District Court may be sent to [attorneys for Trustee, Indenture Trustee and Bank Claimants'] law firms" because under the terms of the Offer, these parties are precluded from disseminating any material in connection with the Offer until 90 days after the Order of February 20, 1980 becomes final.[25]

The strength of claims indicate that plaintiffs are likely to achieve success on the merits in any subsequent litigation.

Injunctive relief is necessary to restrain Objectants from disseminating the Solicitation and to prevent ensuing harm to Debentureholders. Dissemination of the Solicitation would violate Bankruptcy Rule 206, the Securities and Exchange Act of 1934, provisions of the Code of Professional Responsibility and the Trust Indenture Act of 1939.

For all of the foregoing reasons, plaintiffs are granted a preliminary injunction restraining defendants, the Objectants, from disseminating the solicitation Letter and any other material or information connected with the Offer of compromise and settlement approved on February 20, 1980.

ORDERED, that David Cosoff, Melvin Kimmel, Victor Kurtz, Morris Lewy, Jennings F. Ridenhour, acting as the so–called Committee of Objecting W. T. Grant Debentureholders, their respective agents, attorneys, employees, and representatives, of any of them, be, and they are hereby jointly and severally enjoined, restrained and stayed from disseminating solicitations or other information to holders of W. T. Grant Company 4¾% debentures until further order of this Court.

---

25. Indenture Trustee Brief at 3–4.