**In re ITEL CORPORATION, a Delaware Corporation, Debtor.**

**AD HOC PROTECTIVE COMMITTEE FOR 10½% DEBENTURE HOLDERS, Appellant,**

**v.**

**ITEL CORPORATION, a Delaware Corporation, Appellee.**

**BAP No. NC–81–1067–VKL.**

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued July 17, 1981.

Decided Feb. 9, 1982.

I. Walton Bader, Bader & Bader, White Plains, N. Y., for appellant.

Richard Levin, Stutman, Treister & Glatt, Los Angeles, Cal., for appellee.

Before VOLINN, KATZ and LASAROW, Bankruptcy Judges.

OPINION

VOLINN, Bankruptcy Judge:

The debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on January 19, 1981. It also filed, on that date, a pleading entitled Application For Order Requiring That List Of Debenture Holders Be Impounded; And Order Thereon. The Application recited that amongst the creditors were holders for four series of publicly held debentures, and three series of non-registered Guaranteed Debentures which had been sold to European bondholders. The Application further recited that

Interim Bankruptcy Rule 1007 required that where, as occurred in the instant situation, schedules, statements and lists required by that Rule were not filed with the petition, the petition must be accompanied by a list of all the debtor's creditors and their addresses. Applicant requested, however, that the list be impounded and placed under seal pursuant to Interim Bankruptcy Rule 1007(i) because "various sophisticated investors are attempting to utilize the debtor's financial difficulties to purchase the debtor's debentures from public debenture holders at depressed prices. . . ." The court, on the same date, entered an order requiring that the pleading captioned "Exhibit B to Voluntary Petition—List of Debenture Holders" be impounded, placed under seal and not made available to public access.

Thereafter, the Ad Hoc Protective Committee for Itel Corporation 10% Debentures consisting of Tamara Gould, Individually, and See More Light Investments, a partnership, moved the court for an order that the list of bondholders be supplied to counsel for said Committee. I. Walton Bader, of counsel for the Ad Hoc Committee, represented that members of that Committee held about $500,000 in face amount of the debentures, contending that it was the intention of the moving parties to make a number of "applications to the court in connection with the above proceedings, including the suggestion of the contents of a Plan of Reorganization, certain adversary proceedings in this bankruptcy, etc."

The hearing on the motion was held on February 20, 1981. At the hearing, in addition to the debtor, counsel for the Committee of Unsecured Creditors and the Securities & Exchange Commission appeared in opposition to the motion of the Ad Hoc Protective Committee. Insofar as the record shows, little if any evidence was adduced at the hearing.[1] What occurred, for the most part, was argument and colloquy between counsel.

After the hearing was concluded, the court entered findings of fact which recited that appellant had not complied with the provisions of Sections 701 and 702 of the Trust Indenture Act which governs the rights and responsibilities of the various parties to the 10½% debenture issue and have further failed to comply with the provisions of the Trust Indenture Act of 1939, 15 U.S.C. § 77*lll*(b), establishing procedures for communication with debenture holders; that the debenture holders were represented by the Official Unsecured Creditors' Committee and by the Indenture Trustee, and that no evidence had been submitted to establish that the Indenture Trustee was not fulfilling its fiduciary obligations; that if the bondholders' list were removed from impound, a substantial risk existed that the list "might be used for improper purposes or might result in the solicitation of debenture holders for purposes not authorized"; that a substantial risk existed that if the bondholders' list were made public, bondholders might be taken advantage of by speculators; and, finally, that good cause existed and continued to exist for impounding the bondholders' list and that "no cause has been shown by the moving party for the removal of the debenture holders' list from impound."

The court concluded that Interim Bankruptcy Rule 1007(i), and § 105 of the Bankruptcy Code provided authority for impounding the list; that good cause existed therefor, no good cause having been shown for removing the list from impound; that impound of the list did not violate the constitutional rights of the moving parties, and finally, that they had failed to exhaust their remedies, as stated, pursuant to §§ 701 and 702 of the Trust Debenture Act, *supra*, which provided adequate means for the moving parties to communicate with debenture holders and adequate protection for

---

1. Appellee has provided a Supplemental Excerpt of the Record consisting of 264 pages. This includes pleadings, memoranda, the Indenture of 89 pages, the proceedings docket, and 12 pages of the transcript of the prior hearing of January 19, 1981.

the rights of all concerned. This appeal ensued.

1. *Filing of Schedules and Public Access*

Section 521(1), in designating the debtor's duties, states that the debtor shall "file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, and a statement of the debtor's financial affairs; ..." Section 103 of the Code makes the foregoing section applicable to Chapter 11.

Section 107(a) states that papers filed in a case are public records and "open to examination by an entity at reasonable times without charge."

2. *Impounding of Creditors' List*

A. 11 U.S.C. § 107(b)

While Chapter X of the Bankruptcy Act contained provisions for impoundment, its successor, Chapter 11 of the present Bankruptcy Code, contains no provision authorizing impounding of the list of creditors. Under Chapter X, § 164 provided, as does § 521 of the Code, that the debtor-in-possession or the trustee "shall prepare and file in court a list of creditors of each class showing the amounts and character of their claims and securities and, as far as known, the name and post office address or place of business of each creditors; ..." Section 166 then stated:

> The court may, upon cause shown, direct the impounding of the schedules, lists, copies, or information filed under sections 163, 164, 165 of this Act.... [2]

As stated, these provisions are absent from the Code. Appellee contends that there is a provision in the Code authorizing the court to impound records, to-wit, § 107(b). Section 107(a) mandates public access to papers filed in the case which, presumably, would include the creditors' list. Section 107(b) provides that the Bankruptcy Court may, on its own motion, or on request of a party in interest

(1) Protect an entity with respect to a trade secret or confidential research, de-velopment or commercial information; or

(2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

There is nothing in the foregoing section which would warrant impoundment for the concerns mentioned by appellee. It is obvious that withholding of commercial information is directed toward not affording an unfair advantage to competitors by providing them information as to the commercial operations of the debtor. While it is conceivable that the identity and addresses of creditors would fall into this category, it is not likely and, in any event, no evidence or contention was presented in this light.

The only basis for impoundment under the Bankruptcy Code exists by virtue of Interim Rule 1007(i) which has in effect revived § 166 of Chapter X, and Bankruptcy Rule 10–108(c) relating to impoundment. Rule 1007(i) follows Rule 10–108(c) almost verbatim.

B. Interim Rule 1007(i)

The rule-making power of the Supreme Court was extensive under the Bankruptcy Act. It was the intention of Congress, in enacting the Bankruptcy Code, that this rule-making power be limited and be exercised consistently with the substantive provisions of the Code. 28 U.S.C. § 2075. Thus, Title IV of the Bankruptcy Reform Act of 1978, Pub.L. 95–598, provides that during the transitional period, the Supreme Court may issue such additional rules of procedure as will be consistent with Acts of Congress. Further, 28 U.S.C. § 2075 provides that the rule-making power of the Supreme Court shall not abridge, enlarge, or modify any substantive right. The legislative history of § 2075 states that, pursuant to this statute, the rule-making power is retained but does not permit the rules to conflict with, or supersede, any statutory provision.

Because of its genesis in the Bankruptcy Rules Committee of the Judicial Conference of the United States, Rule 1007(i) may be

---

**2.** Bankruptcy Rule 10–108(c) also provides for impoundment. It was ancillary to § 166 and its existence, apart from § 166, is questionable.

entitled to some presumption of consistency with the Code. However, it is questionable that such a presumption can support replacement by rule of a statutory provision which Congress did not choose to carry over from the Act to the Code.

### C. 11 U.S.C. § 105

One other provision of the Code is mentioned as authorizing impoundment, that is § 105, dealing, in a general way, with the power of the court. Section 105(a) provides that the Bankruptcy Court may issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this Title." Without unduly extending this discussion, the legislative history in 2 *Collier* § 105.01 (15th ed.) states that this section does not appear greatly different in scope than 2(a)(15) of the prior Bankruptcy Act which empowered the Bankruptcy Court to make such orders, issue such process, and enter such judgments as may be necessary "for the enforcement of the provisions of this Act." While § 105(a) broadens the powers of the Bankruptcy Act so as to encompass the All Writs Statute, 28 U.S.C. §.1651, it is not likely that it may serve to enforce provisions which are not part of Title 11.

### 3. *The Evidentiary Hearing*

Findings by the court to the effect that various provisions of the Trust Indenture Act of 1939 had not been complied with or that appellants were represented by the Official Unsecured Creditors' Committee or by the Indenture Trustee, are really not relevant to the instant situation, assuming that the debenture holders were in fact represented by the foregoing, which is questionable. The primary question is whether or not impoundment of the list, under the circumstances, is authorized. The balance of the findings deal with the risk bondholders might run with respect to speculators,

as previously indicated, or that there might be improper solicitation for purposes not authorized. In both the foregoing instances, the only material which appears in the record to support such a conclusion or finding, is the allegation of counsel relative to apprehensions that this could happen in the light of their experience with counsel for the appellant with whom they had already undergone, in various courts, protracted and arduous litigation. Substantial documentary references to this litigation were filed. It is not clear as to what conclusions may be derived therefrom other than that appellants might be litigiously inclined. However, the record also contains statements by appellants that they do not desire the list for any purpose other than to communicate with bondholders and that they are willing to submit any such communication for screening by the court, as happened in *Matter of W. T. Grant Co.*, 6 B.R. 762 (Bkrtcy.S.D.N.Y.1980).[3] Counsel for appellant proposed that if the court below permitted access to the list, it would be retained only by counsel who would not divulge it to other persons. Further, any communication that they wished to be made or had with the debenture holders would be submitted "to the debtor and other formal committees that exist, and if necessary to the court, to ensure that there is nothing contained in any such communication that misrepresents any facts or contains any scandalous matter." At another point, counsel advised the court: "All we seek under controlled conditions—and we will protect all the suggested evils that could occur—is to tell other persons similarly situated to our clients that we believe it is in their interest to form a committee to make sure that they are protected in this proceeding and ask them if they are willing to serve, and to tell them what is involved in the service. When the responses are obtained, we will come to the court and

---

**3.** The court below accepted the contentions that *Matter of W. T. Grant Co., supra*, 6 B.R. 752 (Bkrtcy.S.D.N.Y.1980) supported impoundment. It considered whether certain proposed material should be disseminated to debenture holders or not. The case was filed under Chapter XI of the former Bankruptcy Act and involved not only the issue of allegedly misleading communications in violation of the Securities & Exchange Act of 1934, but also improper proxy solicitations under Bankruptcy Rule 208.

suggest the formation of a committee based on those responses ..." These stipulations were susceptible to acceptance by counsel and the court.

In our view, assuming that Interim Rule 1007(i) were to have application to these proceedings, the evidentiary base for impoundment thereunder is inadequate.

## CONCLUSION

■ Assuming, *arguendo*, the application of Interim Rule 1007, *Delatour v. Meredith*, 144 F.2d 594 (2d Cir. 1944) is applicable. Its treatment of the issues presented in this matter warrants extended citation.

> [T]he courts should examine closely any petition for an impounding order to ascertain whether the situation is so unusual as to justify application of the exception. In the present case there surely was no occasion for taking this drastic step. The causes alleged in the petition were all general and to the effect that the reorganization would run more smoothly without outside interference.... [T]he grant of the petition was actually made for the new cause, conceived by the court, that there was danger that the security holders might be persuaded to sell their securities for less than their true worth. Such a rationalization, however, is also of doubtful merit. This is indicated by the fact that the bonds in question were quoted in the over-the-counter market in New York City, and bondholders had hence only to look at current quotations to find what their bonds would bring in the marketplace. *Id.* at 596–97.

The court then spoke to safeguards:

> In any event, if there is real need of such protection, it would seem that it could be obtained by other means less directly destructive of the statutory objections. .... Section 166 requires, after the lists are impounded, that every bona fide security holder have a continued right to their use. This right is granted in absolute terms; the court can place restrictions only upon the manner in which it shall be exercised. Thus, the court, on a

showing of grounds therefor, might provide that all communications be given to the trustee, who in turn would mail them to the various names on the list, thereby fulfilling the dual aims of keeping secret the lists and maintaining free facilities for communication between security holders. *Id.* at 597.

The continued right of use referred to above is provided for in Rule 1007(i)(1), and Bankruptcy Rule 10–108(c)(1). The policy underlying these rules, which was and is applicable to Chapter proceedings, is discussed in 6 *Collier on Bankruptcy* (14th Ed.) § 7.16, stating the purpose for according creditors "an unqualified right to use the lists.":

> "This carries out the policy of the Act to promote general investor participation in the reorganization and to afford the debtor's creditors and security holders an opportunity to communicate with one another, organize committees or to take any other proper steps to protect their mutual interests ..."

The Code affords investors and creditors at least the same access to the lists for the same reasons.

REVERSED and REMANDED for proceedings consistent with this opinion.